It is ORDERED, ADJUDGED, and DECREED that the preliminary injunction heretofore issued be and same is made permanent and that the defendants, Moore Oil Company

DEC-28-1999 14:15 USDC HUNTSVILLE 256 551 0741 P.01

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 DEC 28 AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| S.P. FOOD SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. CV-98-S-3185-S |
| ) | |
| MOORE OIL COMPANY, INC.; ) | |
| RONALD J. MOORE; and MR. ) | |
| AND MRS. EDWARD POOLE, ) | |
| ) | |
| Defendants. ) | |

ENTERED
DEC 28 1999

MEMORANDUM OPINION

Plaintiff "is the owner of a franchise system doing business as Sneaky Pete's, Sneaky Pete's Hot Dogs, and Sneaky Pete's Express." (Complaint (Doc. No. 1) ¶ 8.) It commenced this action on December 28, 1998, requesting injunctive relief for various federal and state trademark/service mark infringements by defendants. The court issued a temporary restraining order and preliminary injunction against defendants Moore Oil Company and Ronald Moore on December 30, 1998. (Doc. No. 5.) The preliminary injunction was extended to, and made binding upon, defendants Mr. and Mrs. Edward Poole on January 7, 1999. (Doc. No. 11.) The injunction was made permanent on May 27, 1999, in accordance with the terms of a settlement agreement and proposed consent decree submitted by the parties. The relevant terms of the stipulated

It is ORDERED, ADJUDGED, and DECREED that the preliminary injunction heretofore issued be and same is made permanent and that the defendants, Moore Oil Company, Inc., Ronald Moore, and Mr. and Mrs. Edward Poole are forever enjoined and restrained individually and collectively, <u>directly and indirectly</u>, <u>and either acting alone or in concert with others</u>, from:

1. using the term "Pete's" in the name of a restaurant that sells hot dogs; and

2. using a font style in the signage for a restaurant that sells hot dogs which is the same as, <u>or very similar to</u> the font style utilized by plaintiff in its incontestable service mark; and

3. displaying the terms [i.e., words] "Hot Dogs" on its sign <u>in a manner similar to that used on plaintiff's sign</u>; and

4. using a double-band diamond pattern of tile decoration in an area where hot dogs are sold in any of the defendants' stores; and

5. <u>using red booths for seating in an area where hot dogs are sold in any of the defendants' stores</u>; and

6. using tabletops that, similar to the ones plaintiff uses, have a "salt and pepper," or gray, color, in an area where hot dogs are sold in any of the defendants' stores.

(Order of May 27, 1999 (Doc. No. 20), at 1-2 (emphasis supplied).)

Five months later, on November 4, 1999, plaintiff filed a motion for defendants to show cause why they should not be held in contempt for violating the foregoing provisions of the permanent

2

injunction.[1] Plaintiff contended that three restaurants owned and/or operated, either directly or indirectly, by defendants, fail to comply with the injunction's provisions.

With respect to the "Famous Joe's" restaurant in Huffman, Alabama, plaintiff submitted evidence indicating that defendants have failed to comply with the second and third requirements of the injunction. (D'Amico affidavit at Exhibit "2.") Plaintiff argued that defendants still use a font style in the signage for the restaurant that is similar to that used by plaintiff as part of its incontestable service mark. Further, plaintiff contended that defendants still display the words "Hot Dogs" in a manner similar to that employed by plaintiff. The photographs submitted reveal that defendants have removed the words "Hot Dogs" from the restaurant's <u>road sign</u> and replaced those terms with a drawing depicting the image of a hot dog nestled in a bun. These photographs also indicate, however, that the <u>building sign</u> on the "Famous Joe's" in Huffman still contains the words "Hot Dogs," and that those words are displayed in a manner similar to that used on plaintiff's building signs.

With respect to the newly-established "Famous Joe's"

---

[1] The permanent injunction shall be referred to as "the injunction" for the remainder of this memorandum opinion.

restaurants in Cleveland, Alabama, and Leeds, Alabama, plaintiff submitted evidence indicating that defendants have failed to comply with the second, third, and fifth requirements of the injunction. (D'Amico affidavit at Exhibits "3" & "4.") Plaintiff made the same arguments here regarding defendants' use of a similar font style and the words "Hot Dogs" as above, with respect to the Huffman, Alabama restaurant. In addition, plaintiff contended that each new restaurant "us[es] red booths <u>for seating</u> in an area where hot dogs are sold ...." (Order of May 27, 1999, at 2 (emphasis supplied).)

Based on the evidentiary submissions included by plaintiff in its motion to show cause, this court concluded that plaintiff had established, by clear and convincing evidence, "'that the alleged contemnor violated [a] court's earlier order.'" *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) (quoting *United States v. Roberts*, 858 F.2d 698, 700 (11th Cir. 1988)). Therefore, the court ordered defendants "'to produce evidence explaining [their] noncompliance'" at a show cause hearing, which was held in Huntsville, Alabama, on December 1, 1999. *Chairs*, 143 F.3d at 1436 (quoting *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991)).

Prior to the hearing on December 1st, defendants submitted

4

their position in writing to this court, in the form of a "Motion to Dismiss Plaintiff's Motion to Show Cause." (Doc. No. 25.) The discussion *infra* takes into consideration that written submission, the evidence presented and arguments made at the show cause hearing, and briefs of counsel submitted after the hearing.

In their motion, defendants argued they have complied fully with the terms of the injunction. With respect to the restaurant in Huffman, Alabama, defendants asserted that "there is no comparison between the font style used by the Plaintiff and that used by Famous Joe's." (Defendants' motion to dismiss, at 3.) Defendants further contended that they have not violated the third requirement of the injunction, because they have replaced the words "Hot Dogs" with a picture or block letters on certain signs. Defendants failed, however, to distinguish the road sign that advertises this restaurant from the sign that is physically attached to the building constructed on the premises.

With respect to the new restaurants in Cleveland and Leeds, defendants contended they "do not own or operate a convenience store and snack bar in connection with Chevron Service Stations located in Cleveland, Alabama, and Leeds, Alabama," aside from the fact that "[t]he [d]efendant Ronald Joe Moore has a minority

5

interest in the service station located in Leeds, Alabama." (*Id.* at 5 & n.1.) In an affidavit, defendant Moore said that "[n]either [d]efendant receives a monetary return from either [Cleveland or Leeds] operation." (Moore affidavit at 2.) Therefore, defendants contended that plaintiff's complaints about these new restaurants are groundless, because they are not "directly or indirectly, acting alone or in concert with others" to violate the terms of the injunction.

## I. DISCUSSION

### A. Introduction

"A civil contempt order is compensatory and coercive." *United States v. Barnette*, 129 F.3d 1179, 1182 n.7 (citing *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1545 n.4 (11th Cir. 1996)). Civil contempt sanctions serve "'to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *Local 28, Sheet Metal Workers' International Association v. EEOC*, 478 U.S. 421, 443, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986) (quoting *United States v. Mine Workers*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701, 91 L.Ed 884 (1947)).

To avoid a finding of civil contempt, a defendant must "'show

either that he did not violate the court order or that he was excused from complying.'" *Chairs*, 143 F.3d at 1436 (emphasis supplied) (quoting *Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990)). With respect to a defendant's alleged compliance with a court order, "the focus of the court's inquiry ... is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson Company, Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990) (citing *Jim Walter Resources, Inc. v. International Union, United Mine Workers of America*, 609 F.2d 165, 168 (5th Cir. 1980)). Further, "[c]onduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." *Khimani*, 892 F.2d at 1516 (citing *Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984)).

**B. Have Defendants Failed to Comply with the Terms of the Injunction?**

Evidence adduced at the show cause hearing leads this court to conclude that defendants have failed to comply with all terms of the permanent injunction. In fact, the majority of the arguments advanced by defendants at the show cause hearing reflect an attempt to re-litigate the initial grounds for enjoining them. Defendant

7

Ronald Moore, who is the president of defendant Moore Oil Company, admitted that the font style and use of the words "Hot Dogs" on the building sign at the "Famous Joe's" in Huffman had not changed since entry of the injunction. Moore went on to admit that the new "Famous Joe's" restaurants in Cleveland and Leeds showcased a font style and use of the words "Hot Dogs" on their building signs that was substantially similar, if not identical, to that used at the Huffman restaurant. However, the bulk of Moore's testimony in the contempt hearing addressed whether that particular font style and use of the words "Hot Dogs" was similar to the font style and use of the words "Hot Dogs" employed by plaintiff in its business. The rub lies in the fact that those issues were decided in December of 1998, when the court made the following finding:

> 9. On its signs for Famous Pete's, defendants use a font nearly identical to that used by plaintiff on signs for Sneaky Pete's, except for the capitalized "T" and the "e"'s on either side of the "T". Furthermore, defendants use the same shadowed background on its signs, and display the terms "Hot Dogs" in a similar manner.

(Order of Dec. 30, 1998, at 3.) This finding prompted the court to enjoin and restrain defendants from using the font style and term "Hot Dogs" in their signage in the same manner they had employed prior to entry of the temporary restraining order. (Order of May 27, 1999, at 1-2.) Defendants thus have not adhered to the

8

injunction at their original Huffman restaurant, despite Moore's admission under oath that he personally understood fully the terms and requirements of that order.

Defendants further deny responsibility for the violations of the injunction that are occurring at the Cleveland and Leeds restaurants, based on the argument that defendant Ronald Joe Moore plays no role in the ownership or operation of those fast food outlets. Moore testified that he had no monetary interest in the Cleveland operation, other than gasoline sales and a verbal agreement with the owner/operators that "allow[s] them to use the name 'Famous Joe's' as long as they pay for it and comply with our requirements."

With respect to the Leeds restaurant, Moore testified that he held a one-third interest on the real property and building itself. He stated that Chad Cowie rents the land and building from Moore and his two partners, and runs the "Famous Joe's" restaurant. Further, Cowie purchases gasoline from Moore Oil Company at the Leeds location. Finally, it is assumed that Moore allows Cowie to use the name "Famous Joe's" through a verbal agreement, similar to the arrangement with the Cleveland restaurant operators.

Moore Oil Company owns the rights to the trade name "Famous Joe's." Ronald Moore registered with the State of Alabama on

February 1, 1999, and obtained certification on March 17, 1999. (Plaintiff's exhibit "4.") When the new "Famous Joe's" restaurants opened in Cleveland and Leeds, Moore suggested to the operators that they look at the design of his store in Huffman. Moore insisted that he did not tell these operators to paint their booths red.

Defendants' noncompliance with the terms of the injunction at the Huffman restaurant is clear. With respect to the Cleveland and Leeds restaurants, this court finds that defendants Ronald Moore and Moore Oil Company have <u>indirectly</u>, and acting in concert with others, contributed to further violations of the injunction by procuring the trade name "Famous Joe's," forging verbal agreements with the operators of the Cleveland and Leeds restaurants for the use of the service mark "Famous Joe's," and suggesting that the operators take note of the design and layout of the Huffman restaurant. Because Moore was indirectly involved in the establishment of these restaurants, the injunction required him to make the operators aware of the court's order of May 27, 1999. Moore's conduct, both directly (Huffman restaurant) and indirectly (Cleveland and Leeds restaurants), constitutes a clear violation of the injunction.

10

C.  **Is Plaintiff Entitled to a Remedy for Defendants' Contempt?**

In *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507 (11th Cir. 1987), the Eleventh Circuit discussed the options available to a district court upon a finding of civil contempt:

> The purposes of civil contempt sanctions are "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." The district court has wide discretion to fashion an equitable remedy for contempt that is appropriate to the circumstances. As the Supreme Court stated in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949), the court has the power to "grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. This may entail the doing of a variety of acts...." Where the purpose of the contempt sanction is compensation, a fine is imposed that is generally payable to the complainant. The fine is determined by the extent of the actual loss and the outcome of the basic controversy. Where the purpose of the contempt is to secure compliance, the sanction is within the district court's discretion. The district court is to consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.

*Id.* at 1515 (other citations omitted). The above analysis continues to be controlling law within the Eleventh Circuit. *See United States v. City of Miami*, 1999 WL 1040126, at *4 (11th Cir. Nov. 17, 1999) (quoting from *Guardian Pools* approvingly).

In this case, plaintiff seeks both compensation and

11

compliance. That is, plaintiff not only requests costs and attorneys' fees from defendants for their past violations of the injunction, but also requests a remedy that will ensure defendants' compliance with the injunction from the present date forward.

In response, defendants argue that equitable considerations bar the award of compensatory relief to plaintiff. Further, defendants inform the court that they are in the process of bringing all restaurants into compliance with all terms of the injunction.

As discussed *supra*, the majority of testimony at the hearing focused on the issue of whether defendants were in compliance with certain terms of the injunction. Testimony by plaintiff's President, Bernard D'Amico, however, revealed that plaintiff knew defendants were not in full compliance between the dates of the preliminary and permanent injunctions, *i.e.*, between December 30, 1998, and May 27, 1999. That testimony further establishes that plaintiff did not voice any concern relating to defendants' non-compliance with the terms of the preliminary injunction during the settlement discussions leading up to the presentation of a consent final injunction:

> Q. All right, sir. Now, after the preliminary injunction was entered in this case back last December a

12

year ago, did you have occasions to visit what was the Springville store [in Huffman, Alabama]?

A. I've been there several times.

Q. How many times?

A. Five or six.

...

Q. Did you know that in the spring of 1999 that there were two or three months of right serious negotiations about concluding this litigation?

A. I was involved in some conversations with my attorney about this, yes.

Q. And as a part of those, after you talked to your lawyer, didn't you go out and look at the store there in Huffman on Springville Road?

A. I did.

Q. And you came back and reported to your attorney?

A. I did.

...

Q. When we entered into that consent decree, wasn't this exactly what you saw there in front of the Springville store?

A. Yes, sir.

Q. Exactly like that?

A. It was Famous Joe's Hot Dogs.

Q. Hadn't changed one iota, had it?

13

A.  I don't believe it had, no, sir.

(Evidentiary hearing transcript, at 29, 30, 36-37.) Plaintiff attempts to justify its decision not to bring defendants' non-compliance with the terms of the preliminary injunction to the attention of this court prior to the presentation of a consent permanent injunction in the following manner:

> However, because these violations were only at one store location, Plaintiff chose not to file additional motions and bring these violations to the Court's attention. Since that time, Plaintiff has discovered that Defendants have embarked upon a plan of expansion for their Famous Joe's restaurants and has violated additional provisions of the Court's Permanent Injunction Order.

(Plaintiff's brief in support of the entry of contempt sanctions against defendants (Doc. No. 27), at 13.)

The undisputed evidence thus reveals that, on the date this court entered a consent permanent injunction, defendants *had* made certain changes to its Huffman restaurant in accordance with the requirements of the preliminary injunction but, significantly, they also had failed to make other pertinent changes (*e.g.*, font style and use of words "Hot Dogs" on building sign). Even so, plaintiff voiced no complaint to defendants or this court.

Based on this evidence, the court finds that equitable considerations make the award of compensatory relief to plaintiff unwarranted. Defendants' non-compliance with certain terms of the

14

preliminary injunction was apparent to plaintiff and its counsel on the dates the parties negotiated and ultimately reached a settlement, which purported to resolve all claims by plaintiff against defendants. It was reasonable, therefore, for defendants to assume from such silence that plaintiff then was satisfied with their efforts at compliance.

Plaintiff could have saved defendants and this court a great deal of time and expense by candidly disclosing, during settlement negotiations, its dissatisfaction with defendants' incomplete efforts to comply with the terms of the preliminary injunction. Instead, plaintiff remained inexplicably silent until defendants commenced expansion of their operation. Plaintiff therefore does not deserve to be rewarded for its delay. While plaintiff does have a right to enforce the terms of this court's injunction, defendants also have a right to rely on plaintiff's representations, both affirmative and those "representations" that reasonably may be inferred from plaintiff's failure to speak or act. At the time of settlement, plaintiff had implicitly communicated through its failure to speak or act that it was satisfied with defendants' conduct following the entry of the preliminary injunction.

Further, defendants have represented to this court that, after

15

ascertaining from the present motion that they had incorrectly interpreted the message implicit in plaintiff's inscrutable silence while negotiating the terms of settlement, they have undertaken further steps to bring their "Famous Joe's" restaurants into full compliance with all aspects of the permanent injunction. They are changing the color of the red seats in the Cleveland and Leeds stores, for example. (*See* Memorandum in support of defendants' response to the motion to show cause (Doc. No. 28), at Exhibit "A.") They also have submitted two different font styles to plaintiff and this court, either of which would appear to comply with the terms of the permanent injunction. (*See* Defendants' response to plaintiff's brief in support of the entry of contempt sanctions (Doc. No. 31), at 3.)

In sum, while the evidence tendered at the show cause hearing establishes that defendants failed to fully comply with the terms of this court's permanent injunction, the court nonetheless concludes that the imposition of monetary sanctions would be inequitable under all the circumstances. Further, because defendants are in the process of achieving full compliance, no further court oversight is necessary at this time.

## II. CONCLUSION

While the foregoing conclusions warrant a finding of contempt,

16

this court exercises its discretion to limit plaintiff's remedy to defendants' promise to forthwith bring all presently existing "Famous Joe's" restaurants, and any that shall be opened in the future, into full compliance with all facets of this court's permanent injunction. Equitable considerations bar the imposition of other remedies.

DONE this 28th day of December, 1999.

_____
United States District Judge

17